UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| CYNTHIA SMITH, ) | Civil Action No.: 4:16-cv-2320-RBH-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | |
| SAM CARBIS SOLUTIONS GROUP, LLC,) | |
| ) | |
| Defendant. ) | |
| _____) | |

**I.      INTRODUCTION**

This action arises out of Plaintiff's employment with Defendant. Plaintiff alleges she was terminated in violation of the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601, et seq. She also alleges state law causes of action for intentional infliction of emotional distress and wrongful discharge. Presently before the court is Defendant's Motion to Dismiss (Document # 5) Plaintiff's claims for intentional infliction of emotional distress and wrongful discharge. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC. This report and recommendation is entered for review by the district judge.

**II.     FACTUAL ALLEGATIONS**

Plaintiff was employed by Defendant from 2008 to June 2015, most recently as a Benefits Coordinator. Compl. ¶ 3. Plaintiff claims that during her employment she suffered verbal abuse, harassment and intimidation by COO Shawn Mizell and Human Resources Representative Leslie Antici and other unidentified employees of Defendant. Compl. ¶¶ 4-5. She alleges that she complained about the harassment to Sam Cramer, Mike Gray, Chance Caulder and Melissa Blalock,

-2-

but they did nothing to protect against the hostile work environment despite Plaintiff's repeated requests to be moved to another work area. Compl. ¶¶ 5,8. Plaintiff went on medical leave on May 19, 2015, after suffering an emotional breakdown as a result of Mizell and Antici's harassing behavior. Compl. ¶ 4. She alleges that Defendant did not offer Plaintiff any FMLA documents or provide twelve weeks of job protection. Plaintiff filed a worker's compensation claim on June 11, 2015. Compl. ¶ 6. She was terminated on June 30, 2015, due to company restructuring but is unaware of any other employee separated effective June 30, 3015, due to restructuring. Compl. ¶ 7. Plaintiff alleges that she was terminated for taking leave under the Family and Medical Leave Act (FMLA) and in retaliation for initiating a workers' compensation claim. Compl. ¶ 10.

### III.   STANDARD OF REVIEW

Defendants seek dismissal of Plaintiff's defamation and civil conspiracy claims pursuant to Fed.R.Civ.P. 12(b)(6). A Rule 12(b)(6) motion examines whether Plaintiff has stated a claim upon which relief can be granted. The United States Supreme Court has made clear that, under Rule 8 of the Federal Rules of Civil Procedure, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The reviewing court need only accept as true the complaint's factual allegations, not its legal conclusions. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555.

Expounding on its decision in Twombly, the United States Supreme Court stated in Iqbal:

> [T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not

do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Iqbal, 556 U.S. at 677-78 (quoting Twombly, 550 U.S. at 555, 556, 557, 570) (citations omitted); see also Bass v. Dupont, 324 F.3d 761, 765 (4th Cir.2003). The court may consider documents attached to a complaint or motion to dismiss "so long as they are integral to the complaint and authentic." Philips v. Pitt Cty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir.2009) (citing Blankenship v. Manchin, 471 F.3d 523, 526 n. 1 (4th Cir.2006)).

## IV.    DISCUSSION

### A.    Intentional Infliction of Emotional Distress

Plaintiff alleges that Defendant, through its dominant corporate owner or officers, agents and representatives, intentionally recklessly inflicted severe emotional distress upon Plaintiff. She alleges that Defendant's actions of constantly harassing Plaintiff to the point of emotional breakdown amounts to conduct so extreme and outrageous as to exceed all possible bounds of decency. She alleges that Defendant's actions caused emotional distress on Plaintiff so severe that no reasonable person would be expected to endure it.  Compl. ¶¶ 28-29.

Defendant first argues that Plaintiff's claim is barred by the Worker's Compensation Act. The exclusivity provision of the Workers' Compensation Act provides that:

> The rights and remedies granted by [the Workers' Compensation Act] to an employee when he and his employer have accepted the provisions of [the Workers' Compensation Act], respectively, to pay and accept compensation on account of personal injury or death by accident, shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin as against his employer, at common law or otherwise, on account of such injury, loss

of service or death.

S.C. Code Ann. § 42-1-540. Based on this provision, South Carolina courts have held that the Workers' Compensation Act provides the exclusive remedy against an employer for an employee who sustains injuries arising out of his employment. Sabb v. S.C. State Univ., 350 S.C. 416, 422, 567 S.E.2d 231, 234 (2002) ("Because [plaintiff's] claims, as employee of University, arose out of and in the course of her employment, the Workers' Compensation Act provides the exclusive remedy for her."). The only exceptions to the exclusivity provision are: (1) when the injury results from the act of a subcontractor who is not the injured person's direct employer; (2) when the injury is not accidental but rather results from the intentional act of the employer or its alter ego; (3) when the tort is slander and the injury is to reputation; or (4) when involving certain occupations expressly excluded by the Act. Cason v. Duke Energy Corp., 348 S.C. 544, 547, 560 S.E.2d 891, 893 n.2 (S.C. 2002).

Defendant argues that courts have routinely held that a claim for intentional infliction of emotional distress (or outrage) based upon the actions of an employer and/or coworkers is preempted by the Workers' Compensation Act. See, e.g., Dickert v. Metro. Life Ins. Co., 311 S.C. 218, 220, 428 S.E.2d 700, 701 (S.C. 1993) (dismissing employee's intentional infliction of emotional distress claim because it is barred by the exclusive remedy provision of the Workers' Compensation Act); Loges v. Mack Trucks, Inc., 308 S.C. 134, 137, 417 S.E.2d 538, 540 (S.C. 1992) (holding that employee's claim for infliction of emotional distress is precluded by the exclusive remedy provision of the Workers' Compensation Act); Menefee v. Westinghouse Savannah River Co., No. 96-1439, 1996 WL 694430, *1 (4th Cir. Dec. 5, 1996) (holding that the plaintiff's infliction of emotional distress claim is barred by the exclusivity provision of the Workers' Compensation Act); Nelson v. Science Applications Int'l Corp., No. 2:11-2928-PMD-BM, 2013 WL 764664, *10 (D.S.C. Feb. 7,

2013) ("Claims by employees against an employer for intentional infliction of emotional distress are subject to, and barred by, the South Carolina Workers Compensation Act."), adopted by, claim dismissed by, 2013 WL 754834 (D.S.C. Feb. 27, 2013).

Plaintiff argues that one of the exceptions to the Workers' Compensation Act's exclusivity provision is applicable here. She argues that the acts supporting her intentional infliction of emotional distress claim were intentional and were committed by alter egos of the company. "[W]hen the tortfeasor/co-employee is the 'alter ego' of the employer," liability for intentional infliction of emotional distress falls outside the scope of the Workers' Compensation Act. Dickert v. Metropolitan Life Ins. Co., 311 S.C. 218, 220, 428 S.E.2d 700, 701 (1993) (citing Stewart v. McLellan's Stores Co., 194 S.C. 50, 9 S.E.2d 35 (1940); Thompson v. J.A. Jones Const. Co., 199 S.C. 304, 19 S.E.2d 226 (1942)). "[O]nly 'dominant corporate owners and officers' may constitute alter egos." Id. at 221, 428 S.E.2d at 701 (citing 2A Larson, Workmen's Compensation, §§ 68.21 and 68.22). "Since Dickert, South Carolina courts have given very little additional texture to the definition of what constitutes a dominant corporate owner or officer." Pauling v. Greenville Transit Auth., No. 6:05-1372-HMH-BHH, 2006 WL 3354512, at *13 (D.S.C. Nov. 16, 2006).

Plaintiff alleges that she suffered verbal abuse, harassment, and intimidation by Leslie Antici, the "Human Resources representative and alter ego of the company" and Shawn Mizell, the "COO and alter ego" of the company. Compl. ¶ 5(b). She also alleges that her emotional distress was "intentionally or indirectly" caused by Defendant's "dominant corporate owner or officers, agents and representatives." Compl. ¶ 29. When reviewing a motion to dismiss, the court must view the factual allegations and all reasonable inferences in favor of the plaintiff. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir.2009). Plaintiff fails to allege sufficient facts to give rise to a reasonable inference that Antici, a human resources representative, is an alter ego

of Defendant. However, it is plausible that the Chief Operating Officer of a company is an alter ego.

Defendant also argues, aside from whether the claim is barred by the Workers' Compensation Act, that Plaintiff fails to state a plausible claim for intentional infliction of emotional distress. To recover for the intentional infliction of emotional distress, a plaintiff must establish that 1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct; 2) the conduct was so "extreme and outrageous" as to exceed "all possible bounds of decency" and must be regarded as "atrocious, and utterly intolerable in a civilized community;" 3) the actions of the defendant caused the plaintiff's emotional distress; and 4) the emotional distress suffered by the plaintiff was "severe" so that "no reasonable man could be expected to endure it." Ford v. Hutson, 276 S.C. 157, 162, 276 S.E.2d 776, 778-779 (1981). "It is permissible for a court to find as a matter of law that based on the allegations contained in a complaint that a defendant's conduct is not so extreme and outrageous to allow recovery for intentional infliction of emotional distress." James v. Pratt and Whitney, 126 Fed.Appx. 607, 614, (4th Cir. 2005) (citing Todd v. South Carolina Farm Bureau Mut. Ins. Co., 283 S.C. 155, 321 S.E.2d 602, 609 (S.C.Ct.App. 1984) quashed in part on other grounds, 287 S.C. 190, 336 S.E.2d 472 (1985) (stating that "[i]t is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, and only where reasonable persons may differ is the question one for the jury")). Here, Plaintiff's only factual allegations describing the conduct of Mizell and Antici are that they verbally abused, harassed and intimidated her. Compl. ¶ 5(b). These factual allegations are insufficient to state a plausible claim that their conduct was so extreme and outrageous as to exceed all possible bounds of decency. See, e.g., James, 126 Fed.Appx. at 608, 614 (finding as insufficient allegations of intentional infliction of emotional distress where the defendant subjected the plaintiff to "extremely

oppressive and hostile" scrutiny of his work); Shipman v. Glenn, 314 S.C. 327, 443 S.E.2d 921, 922–23 (S.C.Ct.App.1994) (holding a supervisor's actions of verbally abusing and threatening an employee with cerebral palsy with the loss of her job, and ridiculing the employee's speech impediment to the extent the employee was physically ill and had to leave work early was insufficient to state a claim for intentional infliction of emotional distress). As a result, dismissal of the intentional infliction of emotional distress claim is appropriate.

### B.     Wrongful Discharge

Defendant also moves for dismissal of Plaintiff's wrongful discharge claim. In separate causes of action, Plaintiff alleges that she was terminated for initiating workers' compensation proceedings and was terminated in violation of the FMLA. In addition these claims, Plaintiff alleges that she was terminated "after making complaints of extreme and outrageous harassment" and that her "discharge in response to her claims of harassment and while on FMLA leave is discharge in violation of public policy." Compl. ¶¶ 40-41.

Under the public policy exception to South Carolina's at-will employment doctrine, an at-will employee has a cause of action in tort for wrongful termination where there is a retaliatory termination of the at-will employee in violation of a clear mandate of public policy. Ludwick v. This Minute of Carolina, Inc., 287 S.C. 219, 337 S.E.2d 213 (1985). However, it is well-established that a public policy discharge claim is proper only when a plaintiff has no available statutory remedy. See Heyward v. Monroe, 166 F.3d 332, 1998 WL 841494, *4 (4th Cir.1998) (applying South Carolina law and holding public policy discharge claim not allowed where employee had remedy under Title VII); Bolin v. Ross Stores, Inc., No. 08–cv–02759–MJP, 2009 WL 363990, *4 (D.S.C. Feb.11, 2009) (citing Zeigler v. Guidant Corp., No. 2:07-3448-MBS-RSC, 2008 WL 2001943 (D.S.C.2008)); Ramsey v. Vanguard Servs., Inc., No. 07–00265, 2007 WL 904526 (D .S.C. Mar.

22, 2007) (granting defendant's motion to dismiss employee's wrongful termination claim because the plaintiff had an available statutory remedy under the South Carolina Payment of Wages Act); Lawson v. S.C. Dep't of Corrections, 340 S.C. 346, 350, 532 S.E.2d 259, 261 (S.C.2000) (public policy discharge claim not allowed where employee had remedy under state Whistleblower Act); Stiles v. Am. Gen. Life Ins. Co., 335 S.C. 222, 228, 516 S.E.2d 449, 452 (1999) ("As these cases make clear, the Ludwick exception is not designed to overlap an employee's statutory or contractual rights to challenge a discharge, but rather to provide a remedy for a clear violation of public policy where no other reasonable means of redress exists") (concurring opinion); Dockins v. Ingles Markets, Inc., 306 S.C. 496, 498, 413 S.E.2d 18, 19 (S.C.1992) (public policy discharge claim not allowed where employee had remedy under Fair Labor Standards Act); Epps v. Clarendon County, 304 S.C. 424, 426, 405 S.E.2d 386, 387 (S.C.1991) (public policy discharge claim not allowed where employee had remedy under 42 U.S.C. § 1983).

Here, Plaintiff does have a remedy for retaliatory discharge while on medical leave under the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601, et seq. and has pleaded such a claim. Plaintiff argues that her wrongful termination claim is pleaded in the alternative, and, as such, she is not precluded from asserting it. Plaintiff argues that, if she is unsuccessful on her FMLA retaliatory discharge claim, she should be able to pursue a claim for wrongful discharge under state common law. However, the case law provides that a wrongful termination cause of action is available "to provide a remedy for a clear violation of public policy where no other reasonable means of redress exists," Stiles, 335 S.C. at 228, 516 S.E.2d at 452, not to provide a remedy when a plaintiff is unable to prove his claim under an available statutory remedy. The case law does not provide that a plaintiff must elect either a statutory remedy or a common law remedy, as Plaintiff seems to suggest. Indeed, courts have dismissed claims for wrongful discharge even where the

plaintiff has chosen not to assert a cause of action under the appropriate statutory provision. See, e.g., Dockins, 406 S.C. at 498, 413 S.E.2d at 19; Epps, 304 S.C. at 426, 405 S.E.2d at 387. Thus, it follows that the prohibition is not from a double recovery, but from pursuing a claim under common law when a statutory remedy exists. Therefore, as to Plaintiff's wrongful termination claim based upon the fact that she was terminated while on FMLA leave, the FMLA provides a remedy for such retaliatory discharge, and, thus, dismissal of Plaintiff's wrongful discharge claim is proper.

As stated above, Plaintiff also alleges that her termination for complaining of harassment violated public policy. Defendant argues that Plaintiff fails to identify a clear mandate of public policy violated by Defendant. The South Carolina Supreme Court has expressly recognized at least two situations in which an action for wrongful discharge in violation of public policy can be maintained: (1) when an employer requires an employee to violate a criminal law as a condition of maintaining employment, see Ludwick v. This Minute of Carolina, Inc., 287 S.C. 219, 337 S.E.2d 213, 214-16 (1985), and (2) when the act of terminating an employee is itself in violation of a criminal law, see Culler v. Blue Ridge Elec. Coop., Inc., 309 S.C. 243, 422 S.E.2d 91, 92–93 (1992). "South Carolina courts have been careful to narrowly interpret the exception, often declining to extend the exception beyond the bounds of Ludwick and Culler." Desmarais v. Sci. Research Corp., 145 F. Supp. 3d 595, 598 (D.S.C. 2015) (collecting cases); see also Merck v. Advanced Drainage Systems, Inc., 921 F.2d 549, 555 (4th Cir. 1990) (explaining that the public policy exception "is to be very narrowly applied" and is not "an open-ended concept"); Taghivand v. Rite Aid Corp., 411 S.C. 240, 244, 768 S.E.2d 385, 387 (S.C. 2015) ("We exercise restraint when undertaking the amorphous inquiry of what constitutes public policy."). The South Carolina Supreme Court has held that "for purposes of juridical application it may be regarded as well settled that a state has no public policy, properly cognizable by the courts, which is not derived or derivable by clear implication from

the established law of the state, as found in its Constitution, statutes, and judicial decisions." Batchelor v. Am. Health Ins. Co., 234 S.C. 103, 107 S.E.2d 36, 38 (1959).

Plaintiff points to no statute, constitutional protection, or judicial decision setting forth any "clear mandate" of public policy. However, she argues that she is not required to identify a clear mandate of public policy in her pleadings and that discovery is necessary before she can do so. She also argues that her wrongful discharge claim should survive dismissal at this stage because courts have not squarely addressed whether an employer's discharge of an employee for opposing a hostile work environment violates a public policy. She points to two cases in which the trial court's dismissal of a wrongful discharge claim was reversed because the public policy question was novel. See Garner v. Morrison Knudsen Corp., 318 S.C. 223, 226, 456 S.E.2d 907, 909 (1995) ("Whether the exception applies when an employee is terminated in retaliation for reporting and testifying about radioactive contamination and unsafe working conditions at a nuclear facility is a novel issue, and such issues should not ordinarily be decided in ruling on a 12(b)(6) motion to dismiss."); Keiger v. Citgo, Coastal Petroleum, Inc., 326 S.C. 369, 373, 482 S.E.2d 792, 794 (Ct.App.1997) ("[W]hether an employer's retaliatory discharge of an employee who threatens to invoke her rights under the Payment of Wages Act is a violation of a clear mandate of public policy[] is . . . a novel issue.").

The cases relied upon by Plaintiff, Garner and Keiger, were decided in 1995 and 1997, respectively. In a 2010 unpublished opinion from the South Carolina Court of Appeals, the court held that the circuit court correctly dismissed a plaintiff's complaint for failure to state a claim because the complaint "failed to enunciate any clear mandate of public policy violated by [the plaintiff's] termination." Novak v. Joye, Locklair & Powers, P.C., No. 2010-UP-225, 2010 WL 10079883, at *2 (S.C. Ct. App. Apr. 1, 2010). Furthermore, recently the South Carolina Supreme Court reiterated the "restraint" courts should employ in "undertaking the amorphous inquiry of what

-10-

constitutes public policy." Taghivand v. Rite Aid Corp., 411 S.C. 240, 768 S.E.2d 385, 387 (2015). The court stated that any exception to the at-will employment doctrine "should emanate from the General Assembly, and from [the Supreme Court of South Carolina] only when the legislature has not spoken." Id. at 389. Finally, this court has routinely dismissed a wrongful discharge cause of action when the plaintiff failed to identify the public policy that was violated. See, e.g., Bell v. Nucor Corp., No. 2:15-cv-03534-CWH, 2016 WL 4435678, *12-13 (D.S.C. Aug. 19, 2016) ("In the present case, the Court agrees with the R&R's assessment that the plaintiff fails 'to identify any public policy violation.' Accordingly, the Court grants the Motion to Dismiss with respect to the claim for wrongful termination in violation of public policy."); Gray v. Am. Homepatient, Inc., No. 2:14-DCN-BM, 2015 WL 892780, *8 (D.S.C. Mar. 3, 2015) ("In her original complaint, Gray did not allege any particular public policy that American HomePatient violated by terminating her. Because of this, the magistrate judge correctly recommended that her complaint be dismissed."); Conner v. Nucor Corp., No. 2:14-cv-4145-SB-MGB, 2015 WL 5785510, at *16-*17 (D.S.C. Sept. 30, 2015) (adopting recommendation for dismissal of wrongful discharge in violation of public policy claim because the complaint failed to articulate any specific source of alleged public policy on which plaintiff was relying other than the federal statutes pursuant to which he was seeking relief).

As noted above, Plaintiff points to no statute, constitutional protection, or judicial decision setting forth any "clear mandate" of public policy violated when an employee is discharged for complaining of harassment, nor does she explain how additional discovery would aid her in discovering any such public policy. Further, the South Carolina Supreme Court has recently found no clear mandate of public policy in a case much more analogous than this case to those cases where clear mandates of public policy have been found. See Taghivand, 411 S.C. at 248, 768 S.E.2d at 389

(declining to expand the public policy exception to at-will employment by recognizing a public policy favoring the reporting of crimes).  Accordingly, absent any allegation of a clear mandate of public policy violated by Plaintiff's termination, dismissal of Plaintiff's wrongful termination claim is appropriate.

## V.     CONCLUSION

For the reasons discussed above, it is recommended that Defendant's Motion to Dismiss (Document # 5) be granted.

                                                                 s/Thomas E. Rogers, III
                                                                Thomas E. Rogers, III
                                                                United States Magistrate Judge

November 15, 2016
Florence, South Carolina